[No. D002925. Fourth Dist., Div. One. Aug. 30, 1985.]

SAN DIEGUITO UNION HIGH SCHOOL DISTRICT et al.,
Plaintiffs and Respondents, v.
GERALD A. ROSANDER, as Superintendent, etc., et al.,
Defendants and Respondents;
CARDIFF SCHOOL DISTRICT, Real Party in Interest and Appellant.

COUNSEL

Terry J. Knoepp and Smith, Bollman & Knoepp for Real Party in Interest and Appellant.

Paul M. Loya, Peter J. Lucey and Atkinson, Andelson, Loya, Ruud & Romo for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

OPINION

**STANIFORTH, Acting P. J.**—Real party in interest Cardiff School District (Cardiff) appeals a judgment of the superior court issuing a peremptory writ of mandate on behalf of the San Dieguito Union High School District and its governing board (San Dieguito), declaring a "withdrawal" elementary school election to be invalid. The trial court concluded limiting the vote on the withdrawal election to the Cardiff voters would violate state law as well as disenfranchise the remaining voters of San Dieguito Union High School District.

FACTS

Cardiff is an elementary school district within the boundaries of San Dieguito and San Diego's North County. Cardiff has two elementary schools

educating students from kindergarten through sixth grade. San Dieguito educates students from grades seven through twelve. Since 1936 San Dieguito has maintained a junior high school program for students living in four elementary school districts: Cardiff, Del Mar, Encinitas, and Solana Beach. Some Cardiff parents have expressed a dissatisfaction with the education afforded to seventh- and eighth-grade students and seek to withdraw their seventh and eighth graders from the junior high school system operated by San Dieguito. These parents claim authority to secede and to establish their own seventh- and eighth-grade classes under Education Code sections 37085 to 37087.

On June 30, 1984, a petition signed by more than 35 percent of the voters registered within Cardiff's district was filed with the county superintendent of schools for the purpose of submitting to the voters of Cardiff's district the question whether Cardiff should withdraw from the junior high school system maintained by San Dieguito. The county superintendent of schools ordered the withdrawal election to be held on Tuesday, March 5, 1985, among the "qualified electors residing within the boundaries of Cardiff School District." The county registrar of voters was to conduct the election.

On January 10, 1985,[1] San Dieguito filed a petition for writ of mandate in the superior court, seeking a peremptory writ ordering cancellation of the scheduled March 5 election. At the hearing on the petition, the trial court entered its judgment ordering issuance of a peremptory writ of mandate as prayed. The trial court ordered (Feb. 27, 1984) the superintendent of schools and registrar of voters to "withdraw and cancel" the March 5 election.

On March 4, 1985, Cardiff filed in this court a petition for writ of mandate, seeking a temporary restraining order to set aside the February 27 judgment and a peremptory order to the superior court to authorize the election. This court (Mar. 5, 1985) denied Cardiff's petition and held the trial court's ruling maintained the status quo, Cardiff failed to show irreparable harm and its legal remedy of appeal was adequate. Cardiff thereafter filed a notice of appeal from the superior court order granting the peremptory writ. At the suggestion of this court, Cardiff sought and obtained authorization to use its petition for writ of mandate (filed by Cardiff) as its opening brief on appeal.

---

[1]At the time of the filing of this lawsuit (Jan. 10), five months and two weeks had elapsed since 35 percent of the signatures of the electors had been obtained. The registrar had sent the sample ballot copy to be typeset, ballots had been ordered, some 16 other election steps had passed by January 10, 1985, and the full expense of the election, $5,690, had been billed to Cardiff.

■ The issue presented is whether Education Code[2] section 37085, which authorizes an election which could result in the withdrawal of students from a high school district's junior high school system, provides for an election to be held throughout the high school district or limits the election only to those voters within the elementary district in whose boundaries the withdrawing students reside. We conclude section 37085 requires a vote among the electors of the entire San Dieguito Union High School District not merely the electors of the elementary district (Cardiff) seeking to withdraw. This conclusion rests upon an analysis of the entire statutory context in which section 37085 is located and upon this second ground: To interpret the code section as Cardiff requests immediately triggers constitutional barriers.

## DISCUSSION

### I

■ Preliminarily we hold the writ of mandate sought was the appropriate proceeding to compel a public body to follow the dictates of statute. (See *Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256]; *Anderson* v. *San Mateo Community College Dist.* (1978) 87 Cal.App.3d 441 [151 Cal.Rptr. 111].) The writ of mandate proceedings may be utilized to enforce the constitutional rights of equal protection. (*Molar* v. *Gates* (1979) 98 Cal.App.3d 1, 25 [159 Cal.Rptr. 239, 12 A.L.R.4th 1197].) A school district which may be adversely affected by a school district reorganization plan and election has juridical standing to seek a writ of mandate to set aside the reorganization plan and compel compliance with legislative requirements. (*Alto Loma School Dist.* v. *San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 549-550 [177 Cal.Rptr. 506].)

### II

■ Conformable to the cardinal rule of statutory interpretation, we look first, in search of legislative intent, to the "words themselves," to the express language of sections 37085 and 37086, subdivision (a). (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1], cert. den. 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117].) These sections and the words relied upon by Cardiff provide: "Any school district within a junior high school or system of junior high schools, maintained by the governing board of a

---

[2]All statutory references are to the Education Code unless otherwise specified.

county, union, or joint union high school district, may withdraw from the junior high system when a majority of the qualified voters in the district voting thereat vote in favor of withdrawal." (§ 37085.)

"Election proceedings may be commenced upon either of the following means:

"(a) A petition signed by thirty-five percent (35%) of the registered voters residing in the district shall be presented to the county superintendent of schools of the County in which the district is situated, setting forth briefly the reasons for withdrawal and praying that the question be submitted to the voters of this district. . . ." (§ 37086.)

Cardiff argues throughout the Education Code sections the word "district" means the elementary school district seeking to remove its students. In contrast, San Dieguito argues the word "district" as used in these sections refers to the entire San Dieguito Union High School District.

In search of the legislative meaning of the term "district" or "this district," we look to the statutory context in which the language is found. ■ Various parts of an enactment must be harmonized by considering the particular section in the context of the statutory framework as a whole. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Sections 37060 through 37088 govern the establishment of junior high school programs by high school districts. Section 37061 provides: "The governing board of a county, a union, or a joint union high school district may establish a junior high school or a system of junior high schools only when a majority of the boards of trustees of the elementary school districts comprising the high school district approve the organization of the course in writing, and file a statement of approval with the high school board, or when at an election called for that purpose a majority of the qualified electors voting thereat vote in favor of the junior high school. Upon the order of the governing board of the high school district, the election shall be called and conducted by the county superintendent of schools having jurisdiction over the high school district, in the manner provided for school elections in Chapter 3 (commencing with Section 5300) of Part 4 of Division 1, Title 1. The ballots used at the election shall contain the words 'Junior High School—Yes' and 'Junior High School—No' with suitable spaces so that the voter may clearly indicate his choice in the matter."

Thus, under this unambiguous provision a junior high school program can be established without consent of the governing board of the elementary

school district as long as *"a majority of the boards of trustees of the elementary school districts comprising the high school district approve."* (§ 37061, italics added.) A second meaning is also available. Under this section, a junior high school program can be established upon an election ordered by the governing board of the high school district. This election could, based upon either of these procedures, result in the establishment of a junior high school program although not a single voter in a particular elementary school district voted in favor of the program.

Third, the entire junior high school program may be discontinued under section 37077 if each of the governing boards of the elementary school districts comprising the high school district adopt a resolution approving a proposal of the high school district to discontinue the junior high school program.

The courses of instruction in the junior high school program may be changed only with the approval of the majority of the boards of trustees of the elementary schools comprising the high school district. (§ 37084.) ▆ Thus, in all matters concerning the establishment or curtailing of junior high school programs, consent of the elementary governing boards throughout the entire high school district or an election by voters through the high school district is the means specified. In this statutory context of establishment or disestablishment and control of instruction, section 37085 should be similarly interpreted to require voters of the entire high school district rather than merely voters of Cardiff to determine the issue of withdrawing from a junior high school program.

Finally, it should be noted in other sections referring to an elementary school district, the specific words "elementary school" are utilized. (§§ 37061, 37077, 37084.) We conclude the word "district" as used in section 37085 should be interpreted to mean a high school district.

III

Cardiff next argues section 37065 supports the concept of a "withdrawal" election which excludes high school district voters. Section 37065 provides: "Notwithstanding section 37062, the governing board of an elementary school district situated within a high school district maintaining a junior high school is not required to permit its pupils who have completed the sixth year of the elementary school to attend the junior high school maintained by the high school district if the elementary school district has, pursuant to the provisions of this article, withdrawn from the junior high school system maintained by the high school district."

There is no doubt as to the authority of the governing board of the elementary school to require its pupils not to attend a junior high school system "if the elementary school has, pursuant to the provisions of this article, withdrawn." Section 37065 deals with the effect or impact of an appropriate election on the power of the governing board of an elementary school district to then withdraw its students. This cart-before-the-horse reasoning in no way aids in the interpretation of the election procedures required under section 37085.

## IV

■ In interpreting a statute we are required to construe the statute in a rational and reasonable fashion and not to cause a resultant absurdity. (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 332 [139 Cal.Rptr. 378]; *City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) If the removal election is limited to voters of Cardiff to the exclusion of interested voters residing in other parts of San Dieguito, the result would be an inconsistent irrationality.

If the section 37085 election is limited to Cardiff, a result could be withdrawal from the junior high school program of only a small geographic and voter portion of the high school district while the majority of electors of the high school district still approved a total high school and junior high school program. A subsequent election of the larger body or approval of the majority of the elementary school boards could reestablish the program from which Cardiff had voted to withdraw. A subsequent election of only Cardiff voters could withdraw Cardiff from the program if Cardiff's interpretation is correct. This unreasonable sequence of events was foreseen by the trial court and referred to as the "yo-yo" effect of withdrawal and reestablishment and withdrawal election.

Countering this argument, Cardiff points to section 37085.5 which provides: "If a school district withdraws from a junior high school system pursuant to a vote in favor of withdrawal pursuant to Section 37085, there shall not be an election to reverse that action *for a least three complete school years* following the date the withdrawal occurs." (Italics added.) The effect of this section does not prohibit but merely delays the "yo-yo" effect. The statute provides no waiting time after the establishment of a junior high school program during which an election to break up the program is proscribed.

More significant and weighty in reason is this fact: Section 37061 provides two different procedures for establishing a junior high school system.

A junior high school system may be established by election ordered by the governing board or by the approval of a majority of the board of trustees of the elementary school districts within the high school district. *Section 37085.5 does not provide the reestablishment of the junior high school system by approval of a majority of the board's elementary school districts* or by any one of the elementary school districts. Thus, in what fashion a departing or withdrawing elementary school district can establish a junior high school program without reliance on the provisions set forth in the Education Code remain a total stumbling block.

In face of this legislative lack of authority, Cardiff represented to the trial court that after the election, if successful, the elementary district would build portable classrooms on its two existing school sites to accommodate the seventh and eighth grade students. The program planned by Cardiff would be a continuing education of the traditional kindergarten through sixth grade with some minor variations. This would not be a junior high school program legislatively authorized.

The court should not when a statute is susceptible to several interpretations follow one which would lead to an unreasonable result. (See *People ex rel. Riles* v. *Windsor University, supra,* 71 Cal.App.3d 326, 332.)

V

It is a well-established principle of constitutional law that statutes are to be construed, if their language permits, so as to render them valid and constitutional rather than invalid and unconstitutional. (*Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]; *People* v. *Amor* (1974) 12 Cal.3d 20, 30 [114 Cal.Rptr. 765, 523 P.2d 1173].) Legislative intent should be derived from the entire act rather than from isolated words or sections. (*Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977 [138 Cal.Rptr. 220].) Where by the terms of the statute and by a fair, reasonable interpretation, the court can arrive at a meaning consistent with requirements of the Constitution, then the statute should be given that meaning rather than another meaning or construction which would conflict with the Constitution. (*County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].) Statutory interpretations which eliminate doubt as to the constitutionality of statutory provision are favored. (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].)

If the unclear words of section 37085 are construed in the manner as sought by Cardiff, that is, allowing only Cardiff residents of the San Die-

guito District to vote, then a question immediately arises concerning constitutionality of the section under the equal protection clause of the California and United States Constitutions.

■ There are two levels of review for statutes impacting the constitutional guaranty of equal protection. (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798-799 [187 Cal.Rptr. 398, 654 P.2d 168].) At the first level, the classification must only bear a rational relationship to a legitimate state purpose. (*Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942, 951-952 [104 Cal.Rptr. 297, 501 P.2d 537].) However, at the second level, strict judicial scrutiny is triggered by judicially identified classifications or classifications which touch on a fundamental interest. (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d 779, 799.)

Under the strict scrutiny standard "the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law, but that the distinctions drawn by the law are *necessary* to further its purpose." (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 785 [87 Cal.Rptr. 839, 471 P.2d 487].) ■ Both state and federal cases establish and repeat the rule the strict standard of review applies to state action which excludes certain potential voters from participation. (See *McDonald* v. *Board of Election* (1969) 394 U.S. 802, 807 [22 L.Ed.2d 739, 744, 89 S.Ct. 1404].) In *Kramer* v. *Union School District* (1969) 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886], the United States Supreme Court applied the strict scrutiny standard to invalidate restrictions on the franchise in a school district election. Similarly, the California Supreme Court applied the higher standard of review to an election to incorporate a city. (*Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d 942.) " 'For a legislative classification relating to the elective process to *avoid* the strict scrutiny test of equal protection, it must have "only minimal, if any, effect on the fundamental right to vote." ' [Citation.]" (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d 779, 799.)

In the recent decision of *Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d 779, the California Supreme Court addressed a situation involving an election to create a new high school district. In *Fullerton,* the State Board of Education approved a plan to create a new unified school district by removing a portion of the Fullerton High School District and unifying it with the Yorba Linda Elementary School District. In effect, some ninth- through twelfth-grade students of an existing high school district were to be "withdrawn" and combined with kindergarten through eighth-grade students of an elementary district to form a unified

(K through 12) district. Although a part of the Fullerton district, the Yorba Linda elementary district was surrounded by two other unified school districts and was not contiguous to the remainder of the Fullerton district. The plan as approved by the state board limited the election to the area proposed for removal and unification, namely the electors of the elementary school district but not the entire school district. The high school district successfully brought a writ of mandate to bar the election.

On appeal, the California Supreme Court ruled the United States and California Constitutions require the elections to be held among all the electors of the high school district. The court rejected the state board's argument the matter involved a geographical classification which was an exception to the rule voting restrictions require strict scrutiny. (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d 779, 800.) Pursuant to the strict judicial scrutiny standard, the Supreme Court found the state had no compelling interest to grant the franchise to one group and to deny it to the other since each group had a substantial although different interest in the election. Therefore, to exclude the other high school district residents from voting on this issue denied those residents equal protection of the laws.

The Supreme Court's reasoning in *Fullerton* is applicable here where the factual situation as between Fullerton and Yorba Linda and the San Dieguito-Cardiff elections are remarkably similar. In *Fullerton,* the election sought to remove a portion of a high school district and to unify it with an elementary school district. In this case the election seeks to remove a portion of a junior high school program from a high school district to an elementary school district. In both cases, the proposed election is limited to the elementary school district and excludes other voters in the affected high school district. The election here, as in *Fullerton,* should be subject to strict judicial scrutiny and cannot be sustained unless justified by a compelling state interest.

In *Fullerton,* the state board sought to justify the limited election by arguing the Yorba Linda residents had a greater interest in establishing a high school in their community than the remaining residents of the high school district. The Supreme Court said: "If we rephrase the justification . . . as one of excluding uninterested voters in order to protect the interests of persons vitally concerned, we encounter a state interest which might in an appropriate case, achieve compelling character." (32 Cal.3d 779, 805.) However, the Supreme Court rejected this justification and pointed to the impact of secession upon the high school district—racial, financial and ed-

ucational—which were of great concern to the remaining residents of the high school districts.

Said the Supreme Court: "In sum, we do not view the classification at issue here as one which separates interested and uninterested voters, but one which divides two groups, each with a substantial although different interest in the election. In such a case the state has no compelling interest to grant the franchise to one group and deny it to the other. We therefore conclude that the decision of the State Board, to the extent that it excluded Fullerton HSD residents from voting at the election to approve the proposed secession of Yorba Linda from the Fullerton HSD, denied such residents the equal protection of the laws." (*Fullerton, supra,* at p. 806.)

In the case at bench there are two groups of voters, each with substantial although different interests in the election. Cardiff (as appears from the evidence presented to the trial court) has 2 elementary schools with total enrollment of about 600. San Dieguito is scheduled to open a newly constructed junior high school in the fall of 1985. Funding for this new school was provided by the State of California and based on the projected enrollment figures which included the current and projected enrollment of Cardiff. The withdrawal of 200 students from the San Dieguito junior high program at the opening of the new junior high and the loss of future projected enrollment from Cardiff would have a substantial adverse impact on the high school district staffing and funding. The reduced enrollment resulting from the loss of Cardiff's seventh- and eighth-grade students would substantially add to the per student cost of operating the remaining junior high school program. The withdrawal of these students would generate $100,000 less income for education in the San Dieguito area.

San Dieguito operates three-year junior high school grades seven through nine and three-year high school grades ten through twelve. If Cardiff were successful in removing the seventh- and eighth-grade students from the high school districts, ninth-grade students from Cardiff would be required to attend ninth grade at a three-year junior high school before matriculating to the three-year high school. Thus, Cardiff students would be required to attend three schools in three years. There is no question but that the citizens within the Cardiff district have a substantial interest in their schools. However, they project a use of portable classrooms with resources insufficient to provide a junior high school program equal to the program currently offered by the high school district. Cardiff's children would lack laboratory facilities, science, computer and business education, home economics and prevocational classes as well as gifted and talented educational classes for

exceptional students. The elementary district would not reasonably be able to duplicate the San Dieguito facilities and educational offering.

Cardiff argues compelling state interests exist for limiting an election to the elementary district. It contended the interests that concerned the voters in the smaller area will be overwhelmed by the larger area. To this argument, the *Fullerton* Supreme Court responded: "It is, of course, clear that the state cannot claim a compelling interest in excluding voters because of how they may vote." (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d 779, 805.) The effect of Cardiff's interpretation of section 37085 would disenfranchise concededly interested voters. The construction favoring enfranchisement should be adopted, thus giving all voters within the high school district a right to vote in the election and thereby avoid the constitutional infirmity.

The judgment is affirmed.

Butler, J., and Brainard, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 13, 1985.

---

*Assigned by the Chairperson of the Judicial Council.