[No. B200176. Second Dist., Div. Two. June 5, 2008.]

In re DARLENE T. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Appellant, v.
DARLENE T. et al., Defendants and Respondents.

930

**COUNSEL**

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Appellant.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendants and Respondents.

## OPINION

**CHAVEZ, J.**—The Los Angeles County Department of Children and Family Services (DCFS) appeals from an order of the juvenile court requiring DCFS to make retroactive AFDC-FC[1] payments to a relative caregiver, maternal grandmother Adela T., for the benefit of the detained minor children, Darlene T. (born Jan. 2003) and twins Iv. H. and Is. H. (born July 2006) (collectively referred to as "children" or "respondents"). DCFS contends that the order violates the separation of powers and that Adela T. was required to exhaust her administrative remedies before a court could consider the funding issue. We agree, and therefore reverse the order.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Initial detention*

On October 27, 2006, the juvenile court detained the children from parental custody after DCFS filed a petition on their behalf. The detention and filing were based on allegations that the children had been exposed to domestic violence between their mother (mother) and the twins' father, Juan H., and that mother had a history of substance abuse and had tested positive for methamphetamine on October 16, 2006. Mother and Juan H. lived with the children in the home of maternal grandmother, Adela T., until Juan H. was asked to leave because he was abusive towards mother.

DCFS first detained the children on October 24, 2006. Mother informed the DCFS social worker, Marissa Medina, that Adela T. had always cared for Darlene. The child had lived with Adela T. since the age of one month because mother was incarcerated; the child identified Adela T. as her mother. When Medina sought to detain all three children, Adela T. offered to care for them. Mother was willing to move out of the residence. The same day that Medina received the necessary clearances, mother moved out of the home, and DCFS detained the children with Adela T.

2. *Efforts to obtain ASFA funding*

The initial detention hearing was held on October 27, 2006. The court ordered that all three of the children be detained with Adela T. The court set a

---

[1] AFDC-FC refers to Aid to Families with Dependent Children-Foster Care, which is funding for foster care and relative care maintenance. (42 U.S.C. § 670 et seq.) The term "ASFA" refers to the Adoption and Safe Families Act of 1997, which establishes the federal guidelines for foster care and relative care placements. (*Ibid.*) The approval process for securing AFDC-FC funds is colloquially called "ASFA approval," which is required before a caregiver may receive AFDC-FC funds.

jurisdictional hearing for November 29, 2006, and ordered DCFS to report on the status of ASFA funding at that time. At the jurisdictional hearing, DCFS reported that the children were still living with Adela T. However, when asked if the report addressed ASFA, county counsel indicated that it did not. The court therefore ordered a supplemental report addressing "the results of any ASFA investigation that has been done and the status of the funding for any relative or non relative extended family member." The court set December 4, 2006, as the date it would receive the report. The December 4, 2006 date was then continued to January 5, 2007.

DCFS submitted a report for the January 5, 2007 hearing. The investigating social worker, Alexander Cisneros, completed an in-home assessment of Adela T. According to Cisneros's investigation, Adela T. had no DCFS, child abuse, or criminal histories. She had known the children since birth, and had been residing with them and mother. She showed a strong commitment to the children and was willing to provide them a permanent home if reunification failed. She also expressed that she was financially capable of providing for all of the children's needs. Cisneros described the home as a two bedroom, with front and rear yards and fencing. The conditions of the home seemed appropriate. Adela T.'s 13-year-old daughter also lived in the home, as well as a 25-year-old nephew.

Rosemarie Ostoich, the ASFA social worker, also conducted a home assessment, yielding similar results. Ostoich concluded that the home met ASFA standards, but only upon completion of a corrective action plan within 30 days, including some repairs and cleanup. In addition, Ostoich had to obtain clean LiveScan[2] results for Adela T. and the adult nephew residing in the home.[3] Ostoich concluded that ASFA approval was pending in order to obtain the results of further criminal clearances on Adela T. and her adult nephew as well as completion of the corrective action plan.

As of January 2, 2007, Adela T. informed DCFS that she had completed the corrective action plan and submitted to a LiveScan, but the results were still pending. Cisneros attempted to contact Ostoich to determine whether Adela T. had completed all corrective measures, but had not heard back in time for the report submitted in January 2007. The juvenile court continued the matter to February 2, 2007, and ordered DCFS to obtain ASFA approval by that date. The court adjudicated the Welfare and Institutions Code section

---

[2] "LiveScans" are the method by which DCFS obtains comprehensive criminal background checks as required by Health and Safety Code section 1522.

[3] Ostoich discussed with Adela T. the options of having the nephew leave the home or having him move into the guesthouse, which was under construction, if the nephew was unable to obtain the identification necessary for a LiveScan.

300 petition, ordered the children declared dependents of the court, placed them in suitable care with Adela T., and ordered reunification services for mother and Juan H.

On February 2, 2007, DCFS still had not provided a report on the status of ASFA funding. The court continued the matter to February 16, 2007, for DCFS to provide an update on the ASFA evaluation. On February 16, 2007, DCFS requested a continuance so that it could comply with court instructions. DCFS reported that ASFA could not approve the home because the adult nephew was undocumented and could not undergo a LiveScan without identification. Adela T. had been instructed to seek funding from the Department of Public Social Services (welfare department). The court continued the matter to February 23, 2007.

On February 23, 2007, with ASFA supervisor Joe Chavez present, DCFS explained its efforts to obtain ASFA approval. After the initial detention of the children, DCFS had referred the matter to its Kinship Support Division, which received the referral on November 1, 2006. The same day, social worker Ostoich was assigned to the matter. Over the next two weeks, Ostoich attempted to reach Adela T. to schedule an appointment for a site visit, notified the primary social worker of the need for LiveScan results for Adela T. and any other adult living in the home, and checked the criminal record system for LiveScan results, which were unavailable. On November 30, 2006, Ostoich was able to schedule a site visit for December 4, 2006. Adela T. informed Ostoich that she had not yet submitted to a LiveScan; Ostoich advised her to submit to a LiveScan as soon as possible.

Ten days later, on December 14, 2006, Ostoich attempted to retrieve the LiveScan results, but there was still no record of them. Ostoich also attempted to contact Adela T., but her telephone was disconnected. Ostoich sent her a letter asking her to contact her primary social worker. Ostoich also contacted the primary social worker to notify her that without LiveScan results the home could not be approved. The same day, Ostoich sent a "five day alert" to Adela T.'s primary social worker as well as her supervisor regarding the potential denial.

On December 21, 2006, Ostoich again attempted to contact Adela T., but the telephone remained disconnected. In early January 2007, Adela T. made the repairs to her home necessary for compliance with the corrective action plan. However, on January 22, 2007, Ostoich left a message for the primary social worker and her supervisor letting them know that she was unable to approve the home due to the fact that she was still lacking LiveScan results for Adela T. and the adult nephew living in the home. On January 25, 2007,

Ostoich again checked the criminal record system, which yielded no results for Adela T. or the adult nephew. Accordingly, ASFA approval was denied on January 26, 2007.

The juvenile court was upset about the lack of communication between the ASFA social worker and the field social workers. It continued the matter to March 9, 2007.

On March 2, 2007, the adult nephew submitted to a LiveScan. It yielded negative results. Initially Adela T. had reported that the nephew was undocumented and did not have appropriate identification to submit to a LiveScan, but later told DCFS that he worked all the time and was unable to submit to a LiveScan. By the time the LiveScan was completed, ASFA had already closed the original referral. DCFS submitted a new referral on March 5, 2007.

On March 9, 2007, DCFS reported to the juvenile court that it had received LiveScan results for Adela T. (submitted in Oct. 2006) and the adult nephew (submitted in Mar. 2007). Neither had a criminal history. DCFS explained that on five prior occasions in November and December 2006 and January and February 2007, Adela T. had been advised by a social worker that her home would not be ASFA approved until the nephew submitted to a LiveScan. Adela T. initially told the social worker that she did not need financial assistance. However, in January 2007, Adela T. indicated that she was having financial difficulties and changed her mind about financial assistance. With the encouragement of her social worker, Adela T. received public assistance through the welfare department for the month of February.

The court continued the matter to April 6, 2007, for ASFA completion. At the April 6, 2007 hearing, DCFS reported on the new ASFA referral, opened on March 5, 2007. The referral was assigned to social worker Ostoich and the home appeared to meet ASFA criteria. The court ordered that ASFA approval be obtained by April 27, 2007.

On April 27, 2007, DCFS noted that Adela T. was taking excellent care of the children. Social worker Ostoich had conducted another home assessment on April 12, 2007, but ASFA approval remained pending. The court ordered Azuzenna Aguayo (the current DCFS social worker), Ostoich (the ASFA social worker), and Chavez (the supervising social worker) to be present for the next court hearing on May 7, 2007.

On May 7, 2007, Chavez reported that Adela T.'s ASFA home assessment had been completed and approved as of April 12, 2007. During the May 7 hearing, the court went through the chronology of the case and stated its belief that Adela T.'s home met ASFA requirements on December 4, 2006.

The court wanted to know if DCFS was "sticking with their April 12th date," to which county counsel answered "yes." The court then set an order to show cause for sanctions (OSC) as to why the court should not order retroactive funding.

### 3. *OSC proceedings and the court's order for retroactive funding*

On May 30, 2007, Chavez submitted another report which once again explained the chronology of the efforts to obtain ASFA approval beginning on November 1, 2006. The report indicated that the files concerning prior referrals on Adela T. had been ordered from archives on December 14, 2006, but that LiveScan results and the information on the prior referrals was not available when ASFA approval was denied in January 2007.[4] On February 6, 2007, Adela T. had said that she really did not need the funding and that she would keep all three children if she could adopt them. Chavez wrote that the Kinship Support Division of DCFS had made a "diligent effort to complete an assessment for the home of Adela T." prior to the final approval as of April 12, 2007.

DCFS explained to the court that, "The State regulations cite that an assessment should be completed within 30 days or denied and/or closed."[5] The original referral remained open for about 75 days with significant issues pending, and was denied on January 25, 2007. The new referral was not received until March 28, 2007. Social worker Ostoich made contact with Adela T. within one week and a site visit within two weeks thereafter. DCFS also explained that, "The regulations are that if a home assessment is denied the Standards Met date from that original referral cannot be used for any subsequent referral."[6] Therefore, DCFS could not approve retroactive payments. The funding would begin as of the date of final approval—April 12, 2007.

---

[4] There had been some child abuse referral hits on the DCFS database that later showed Adela T. as nonoffending, and indeed, the person who had made the referrals to DCFS. Although the primary social worker had requested this information from the DCFS archives, as set forth above, the information was not available until after the initial ASFA denial.

[5] In response to this court's inquiry, DCFS filed a letter on May 2, 2008, providing the following authority for this statement: Section 102401, subdivision (a) of title 22 of the California Code of Regulations, which states that "[w]hen the requirements for licensure are not met, the Department shall deny the application within 30 days after receipt of a completed application." In addition, in its request for judicial notice filed concurrently with the letter, DCFS provided this court with a copy of DCFS policy No. 0100-520.10, which expressly states that "[i]f the child is already in the home . . . , the assessment shall be initiated within five business days and completed within 30 calendar days."

[6] In its request for judicial notice, DCFS provided this court with a copy of DCFS policy No. 0100-520.30, which states that: "AFDC-FC will be paid retroactively to the date that all Federal requirements have been met." DCFS argues that this policy, which implements the regulations regarding licensure set forth in title 22 of the California Code of Regulations,

The court nevertheless ordered retroactive payments from the date of detention, October 27, 2006, without reference to any specific authority. The court explained that it was DCFS's obligation to assess the home for safety; if the home was not safe, DCFS should have removed the children from Adela T.'s care. If it was safe, DCFS should have provided Adela T. with funding at the outset.

On June 8, 2007, DCFS filed an application for rehearing, which was denied on June 21, 2007. On July 2, 2007, DCFS filed a notice of appeal, challenging the May 30, 2007 order for retroactive payments and the June 21, 2007 order denying the rehearing. Along with the notice of appeal, DCFS filed a writ of supersedeas, which was denied by this court on July 11, 2007.

## DISCUSSION

### I. *Standard of review*

DCFS presents a pure question of law: whether the juvenile court acted in excess of its powers when it issued its order requiring DCFS to make retroactive ASFA payments to Adela T. DCFS argues that the court violated the doctrine of separation of powers and violated law which dictates that an applicant must exhaust her administrative remedies before a court may consider the issue of ASFA funding. We review these purely legal issues de novo. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].)

### II. *Applicable law*

■ Subchapter IV, part E of the Social Security Act (42 U.S.C. § 670 et seq.) (part E) is the legislative source of child welfare funding. Part E requires that states seeking federal financial participation for child welfare funding comply with specific requirements. (42 U.S.C. §§ 671, subd. (a), 672.) Thus, if state and local child welfare agencies do not comply with federal requirements, they are not eligible for federal funding for foster care

implicitly forbids retroactive funding prior to the date when all requirements are met. DCFS cites *Chevron, U. S. A. v. Natural Res. Def. Council* (1984) 467 U.S. 837, 843–844 [81 L.Ed.2d 694, 104 S.Ct. 2778], which explains that where "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." Thus, DCFS argues, because there is no state regulation specifically addressing retroactive payments, DCFS has filled the gap with a logical extension of the existing regulations providing that no retroactive ASFA payments may be made prior to the date that all ASFA requirements are met. Respondents do not argue that this policy is "arbitrary, capricious, or manifestly contrary" to state regulations (*Chevron, U. S. A.*, at p. 844), therefore we do not address this question, and shall assume that the policy is legally supportable.

payments under part E. To ensure federal financial participation, California law requires that part E eligibility standards be met as a condition before any payment of AFDC-FC benefits is made from either state or county funds. (Welf. & Inst. Code, §§ 11402, 11402.1.) In California, the agency responsible for administering the AFDC-FC program under part E is the State Department of Social Services (DSS). (Welf. & Inst. Code, § 10600 [providing that DSS is the "single state agency with full power to supervise every phase of the administration of public social services . . . for which grants-in-aid are received from the United States government or made by the state in order to secure full compliance with the applicable provisions of state and federal laws"].)

California law governing the detention of children under Welfare and Institutions Code section 300 provides that, "Immediately following the placement of a child in the home of a relative . . . the county welfare department shall evaluate and approve or deny the home for purposes of AFDC-FC eligibility pursuant to Section 11402." (Welf. & Inst. Code, § 309, subd. (d)(2).)

III.  *Adela T. was required to exhaust administrative remedies before a court could consider the issue of ASFA funding*

DCFS's position that the juvenile court's order requiring it to make retroactive AFDC-FC payments to Adela T. violated the law is based on two arguments: first, that the court's action violated the doctrine of separation of powers, and second, that Adela T., as relative caregiver, was required to exhaust her administrative remedies before the juvenile court could consider the issue.

In support of its separation of powers argument, DCFS notes that DSS is part of the executive branch of government. (Welf. & Inst. Code, § 10550 et seq.; Gov. Code, § 11000 et seq.) In administering and enforcing the AFDC-FC program, DSS and DCFS exercise the powers given to them by the Legislature. The judicial branch of the government, therefore, has no authority to interfere with the performance of these duties, except as allowed through statute and by the administrative process. (Welf. & Inst. Code, § 10960 et seq.; Code Civ. Proc., § 1094.5 et seq.; Gov. Code, § 11500 et seq.) DCFS cites *In re Ashley M.* (2003) 114 Cal.App.4th 1, 6 [7 Cal.Rptr.3d 237], and *In re Harry N.* (2001) 93 Cal.App.4th 1378 [114 Cal.Rptr.2d 46], as support for its position that the juvenile court may not interfere with powers that the Legislature has specifically given to DSS.

In addition, DCFS explains that title 42 of the United States Code, section 671(a)(12), requires a state plan that provides for "an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to this part [42 U.S.C. § 670 et seq.] is denied or is not acted upon with reasonable promptness." Consistent with this federal requirement, California has adopted a system for a fair hearing, codified at Welfare and Institutions Code section 10950 et seq. and Government Code section 11500 et seq. Welfare and Institutions Code section 10950 specifically provides a request for a hearing, upon the filing of a request with DSS, if an application for benefits is made and denied.

The hearing afforded by Welfare and Institutions Code section 10950 is conducted by an administrative law judge or the director of DSS. (Welf. & Inst. Code, §§ 10055, 10953.) If the applicant receives an adverse decision, he or she may request a rehearing within 30 days of the decision. The director is required to grant or deny the request for rehearing within 15 days; the failure to act is deemed a denial. (Welf. & Inst. Code, § 10960.)

Judicial review of the director's final decision is governed by Welfare and Institutions Code section 10962, which allows applicants to file a writ petition with the superior court requesting review of the proceedings. The Supreme Court has held that when a hearing under Welfare and Institutions Code section 10950 results in a decision adverse to the applicant, the exclusive remedy is to file an action for writ of administrative mandate in the superior court pursuant to Code of Civil Procedure section 1094.5. (*Green v. Obledo* (1981) 29 Cal.3d 126, 143, fn. 12 [172 Cal.Rptr. 206, 624 P.2d 256].) DCFS cites *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942], for the proposition that "exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." ■ DCFS further cites *In re Joshua S.* (2007) 41 Cal.4th 261 [59 Cal.Rptr.3d 460, 159 P.3d 49] (*Joshua S.*), as authority for its position that a juvenile court does not have the authority to order DCFS to make AFDC-FC payments without an administrative determination of eligibility.

Respondents do not disagree with DCFS's position that the exhaustion of administrative remedies is a prerequisite to jurisdiction in the superior court. Their response to DCFS on this point is twofold: first, they argue that the exhaustion doctrine does not implicate subject matter jurisdiction but rather is a " 'procedural prerequisite' 'originally devised for convenience and efficiency' and now 'followed under the doctrine of *stare decisis*. . . .' [Citation.]" (*Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 222 [239 Cal.Rptr. 470].) Thus, respondents argue, failure to pursue the administrative remedy is not a jurisdictional bar to seeking judicial relief from a superior

court. (*Doster v. County of San Diego* (1988) 203 Cal.App.3d 257, 260 [251 Cal.Rptr. 507] (*Doster*).)

In addition, respondents argue that Adela T.'s failure to exhaust administrative remedies should be excused in this case. Again citing *Doster, supra*, 203 Cal.App.3d at pages 260–261, respondents note that "[e]xceptions to the [exhaustion] rule include situations when the agency is incapable of granting an adequate remedy [citation] or when resort to the administrative process would be futile because it is clear what the agency's decision would be [citations]." Respondents argue that the requirement of exhaustion of administrative remedies should not be applied here because "[t]he requirement to exhaust administrative remedies in cases such as this . . . would result in yet more delays in the approval of any relative home for AFDC-FC funding purposes and create an impossible logjam on the road to permanence."

We find that this case does not qualify for an exception to the rule requiring exhaustion of administrative remedies. *Doster, supra*, 203 Cal.App.3d 257, involved a city employee who had restrictions placed on his job after he was charged with incompetence. The court stated that, in the specific circumstances of that case, it questioned "the adequacy of the administrative hearing and the purposes to be served by it." (*Id.* at p. 262.) The court reasoned that, because there had been a prior hearing before the civil service commission on which the restrictions were based, "[t]he relevant evidence relating to controverted matters on Doster's competence had been presented and decided earlier by the Civil Service Commission." (*Ibid.*) Thus, the court concluded, "[i]t is much more efficient for the court to review the narrow question of whether the sheriff properly imposed restrictions on Doster on the administrative record made before the civil service commission rather than requiring needless administrative review to determine whether there is a legal basis for the sheriff's action." (*Ibid.*) Here, in contrast, there has been no prior administrative review rendering an administrative hearing to be "needless." The cases cited within *Doster* are equally distinguishable. (See *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342–343 [124 Cal.Rptr. 513, 540 P.2d 609] [holding that the city's grievance procedure was inadequate to resolve the controversy because the controversy did not fall within the scope of grievance resolution provided for in the applicable ordinance and the grievance procedure was manifestly inadequate to handle such complex disputes]; *Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 520–521 [205 Cal.Rptr. 6] [noting that there are exceptions to the exhaustion of administrative remedies rule but ultimately determining that no such exception applied].)

Here, there is no indication that Adela T. ever made an effort to challenge the January 2007 denial of ASFA approval directly with DSS. Nor is there any indication that such a determination would be outside the scope of DSS's authority or would necessarily render a denial. On the contrary, such a proceeding would provide a comprehensive record, as well as a final administrative determination, for the superior court to review. In sum, respondents have failed to cite to any authority for the proposition that, under the circumstances, an exception to the doctrine of exhaustion of administrative remedies should be applied.

Finally, respondents argue that a juvenile court has the right to liberally construe the law to carry out its purposes, including procuring for the children the custody, care and discipline "as nearly as possible equivalent to that which should have been given by his or her parents." (Welf. & Inst. Code, § 202, subd. (a).) Further, respondents argue, the Legislature intended for the juvenile courts to have the power to make any orders necessary to ensure the well-being of any child removed from his or her home because of abuse or neglect. In support of this position, respondents cite Welfare and Institutions Code section 362, subdivision (a), which provides that "[w]hen a child is adjudged a dependent child of the court . . . the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child."

This argument was specifically rejected in *Joshua S., supra*, 41 Cal.4th at page 273, where the Supreme Court held that the Court of Appeal "erred in finding that section 362, subdivision (a), gives the juvenile court 'authority to order the department to make [AFDC-FC] payments' without an *administrative* determination of the children's eligibility for those payments." (Original italics.) While respondents attempt to distinguish *Joshua S.* on factual grounds, we find that the basic principle of law set forth by the Supreme Court applies to the case before us. Whether the administrative determination is grounded on facts such as the location of the children, as in *Joshua S.*, or the inability of DCFS to obtain the necessary information for ASFA approval, the Supreme Court has made it clear that the juvenile court may not order such funds under the authority set forth in Welfare and Institutions Code section 362, subdivision (a).[7]

---

[7] Respondents also cite *In re Lisa R.* (1975) 13 Cal.3d 636, 643 [119 Cal.Rptr. 475, 532 P.2d 123], which stated that "[n]otwithstanding the absence of specific authorization to make particular determinations, a juvenile court is nevertheless vested with the authority to make such determinations which are incidentally necessary to the performance of those functions." *Lisa R.* involved the juvenile court's determination of parentage. (*Ibid.*) Therefore, the case does not stand for the proposition that a juvenile court may make such an incidental determination as to ASFA funding.

## IV. *The juvenile court did not order sanctions*

Respondents argue that, "The juvenile court correctly imposed sanctions on [DCFS] for needless delays in obtaining ASFA approval for federal funding for the relative caretaker and in ordering that those sanctions take the form of retroactive funding to benefit the minors." This position is premised on an incorrect assumption: that the juvenile court's order for retroactive payments was an order imposing sanctions. We disagree with this basic premise.

While respondents cite general law explaining a court's power to impose sanctions, they fail to provide a citation to the record indicating that the juvenile court intended the order to be an imposition of sanctions on DCFS. The juvenile court never made an order finding DCFS to be in contempt of court, and a review of the relevant trial court records reveals no mention of a finding of contempt.[8] (See *In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1131 [41 Cal.Rptr.3d 909] [refusing to consider evidentiary sanction to be a sanction imposed for contempt under Welf. & Inst. Code, § 213 because the court "never once referred to 'contempt' when considering the penalty it imposed"]; *In re Mark A.* (2007) 156 Cal.App.4th 1124, 1143 [68 Cal.Rptr.3d 106] [finding court's sanction erroneous in part because the court "made no finding of contempt and made no order adjudging father guilty of contempt"].) In addition, in order to make a finding of contempt sufficient to impose sanctions, the juvenile court would have been required to provide certain procedural safeguards. (*Vanessa M.*, at p. 1131 ["the court did not provide the required procedural safeguards for such a contempt proceeding, including: service of notice, a formal hearing at which the contemner is entitled to call and cross-examine witnesses, the presumption of innocence, and proof of the contempt beyond a reasonable doubt"].) The court failed to undertake any of these procedural safeguards. Because the record does not indicate that the order for retroactive funds was an imposition of sanctions, we decline to address respondents' argument that imposition of sanctions in the form of retroactive ASFA funding was appropriate.

---

[8] At oral argument, respondents' counsel cited Code of Civil Procedure section 128.5 as authority for the juvenile court's power to impose sanctions for "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (*Id.*, subd. (a).) Respondents' counsel further indicated her position that section 128.5 was the authority under which the court ordered the retroactive payments. We decline to analyze the propriety of such action in this matter because the juvenile court gave no indication that its action in ordering retroactive payments was intended to be an exercise of its power under that code section.

## DISPOSITION

The order is reversed.

Boren, P. J., and Doi Todd, J., concurred.