Filed 4/27/21  Modified and Certified for Pub. 5/21/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re N.A., a Person Coming Under the Juvenile Court Law. | D077956 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3643A) |
| v. | |
| N.A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Tilisha Martin, Judge.  Affirmed.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Jesica N. Fellman, Deputy County Counsel, for Plaintiff and Respondent.

Appellant N.A. is a nonminor former dependent (NFD).  While she was a minor, she lived in the home of a legal guardian, who received financial aid (aid to families with dependent children-foster care, or AFDC-FC) on N.A.'s

behalf.  When N.A. was 17 years old, she moved out of the guardian's home. The San Diego County Health and Human Services Agency (Agency) was not informed of this circumstance, and AFDC-FC payments to the guardian continued past N.A.'s 18th birthday.  The guardian provided some financial support to N.A. after she moved out, but at some point, the guardian stopped providing support altogether.

Thereafter, N.A. petitioned to return to juvenile court jurisdiction and foster care, which would provide her with certain services and financial aid, under section 388.1 of the Welfare and Institutions Code.[1]  At that time, the Agency became aware of N.A.'s prior living circumstance and determined that she and the guardian became ineligible for AFDC-FC payments when N.A. moved out of the guardian's home before N.A. turned 18.  The Agency sent notice of its decision to the guardian.  Based on its determination that N.A. was not actually eligible to receive AFDC-FC payments after she turned 18 because she had moved out of the guardian's home by that time, the Agency recommended denying her petition for reentry.  (§ 388.1, subd. (a)(2) [qualified petitioners include "nonminor former dependent . . . who received . . . aid after attaining 18 years of age"].)

The juvenile court denied N.A.'s petition for reentry under section 388.1 but ordered the Agency to notify N.A. directly of its eligibility determination so that she could pursue administrative remedies.

On appeal, N.A. contends that the juvenile court's order is based on an erroneous interpretation of section 388.1 and related statutes.  Alternatively, N.A. argues that the court should have decided the AFDC-FC eligibility issue

---

[1]     Further unspecified statutory references are to the Welfare and Institutions Code.

because exhausting the administrative hearing process would be futile under the circumstances. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. N.A. became a juvenile dependent when she was 11 years old. When she was 15, N.A. began living in the home of Julie L. (guardian). The juvenile court subsequently selected a permanent plan of legal guardianship, appointed Julie L. as the guardian, and terminated its jurisdiction.

In January 2019, 17-year-old N.A. indicated in a meeting with her case worker (Salcido) that she was not getting along with her guardian. Salcido encouraged N.A. to try to work things out. The guardian and N.A. reported to the Agency in February 2019, August 2019, and January 2020 that N.A. was continuing to reside in the guardian's home.[2] Throughout that time, and past N.A.'s 18th birthday in January 2020, AFDC-FC funds were provided to the guardian based on the Agency's understanding that N.A. was living in the guardian's home.[3]

In May 2020, N.A. filed a request to return to juvenile court jurisdiction and foster care (form JV-466, petition for reentry) under section 388.1, indicating that (1) she planned to attend college, (2) her guardian received AFDC-FC payments on her behalf after she turned 18 years old, and (3) her guardian was no longer supporting her. Social worker Salcido interviewed N.A. about her petition for reentry, and N.A. disclosed for the first time that

---

[2]    In a statement of facts supporting eligibility for AFDC-Extended Foster Care, signed January 2020, 18-year-old N.A. declared that her current address was the guardian's address.

[3]    It appears that the guardian received approximately $960 per month for N.A.'s care.

she had moved out of the guardian's home in late January 2019. N.A. told Salcido that she and the guardian had been constantly arguing, and the guardian began telling her, " 'you can't live here anymore.' " N.A. went to live with a family friend, and the guardian paid for N.A.'s rent at the family friend's home.[4] Salcido spoke to the family friend, who confirmed that N.A. lived with her until August 2019, at which point N.A. moved out of the family friend's home and into an apartment with her boyfriend. N.A. lived with her boyfriend until the lease ended in May 2020. She then began living in the home of her boyfriend's parents.[5] When Salcido asked N.A. why she had not informed the Agency earlier about moving out of the guardian's home, she replied, " 'because I was a minor and was worried about where the State would choose to place me. As an adult I feel like I have more of a say so of where I can be.' "

As part of the assessment of N.A.'s petition for reentry, Salcido made an unannounced visit to the guardian's home. Before the visit, the guardian continued to report that N.A. was living with her. After Salcido observed during his visit that N.A.'s belongings were not in "N.A.'s bedroom," the guardian told Salcido that N.A. "comes and goes" from the boyfriend's parent's home, "does what she wants," "lies," and "does not listen." The guardian further declared that she no longer wanted responsibility over N.A., that she was "done" with the guardianship, and that the case should be

---

[4]    N.A. said that the guardian gave her $500 a month for rent, while the family friend said the guardian paid $200 a month for rent.

[5]    In late April 2020, N.A. gave birth to a baby girl, who also lived at the boyfriend's parents' home.

closed "today." The guardian maintained that N.A. had continuously lived with her and not with the family friend or in her own apartment.

The Agency determined that N.A. became ineligible for AFDC-FC funding in 2019, when she moved out of the guardian's home before turning 18 and that she was thus ineligible for reentry in extended foster care (EFC). The Agency recommended that the juvenile court deny N.A.'s petition for reentry. Salcido otherwise noted in his written report that N.A. was a "bright student and hard worker," was enrolled in college, had several jobs, and was a highly motivated young person.

The juvenile court appointed counsel for N.A. (counsel for nonminor former dependent, or NFD counsel), ordered the parties to brief the issue of whether N.A. was qualified to petition for reentry, and set a contested special hearing. The parties filed initial hearing briefs, and the contested proceeding ultimately occurred over three days in July and August 2020.

On the first hearing date in July, the court received the Agency's written reports in evidence, heard testimony from social worker Salcido, and considered counsel's arguments.

On the second hearing date in July, the court announced that it was inclined to grant N.A.'s petition for reentry under section 388.1 and related statutes, based on its findings that: (1) N.A. was not living in the guardian's home by February 2019; (2) the guardian received foster care payments for N.A. after N.A.'s 18th birthday; (3) the guardian had been supporting N.A. in some capacity both before and after her 18th birthday, including providing funds for rent and to help N.A. obtain a car loan, but was no longer supporting N.A. at the time she filed her petition for reentry; and (4) N.A. was enrolled in college, satisfying EFC participation criteria (§§ 388.1, subd.

5

(c)(5)(E), 11403, subd. (b)(2) ["the nonminor is enrolled in an institution that provides postsecondary or vocational education"]).

The court acknowledged that it had no authority to make AFDC-FC funding decisions but ordered the Agency to assist N.A. with "exploring the AFDC-FC eligibility." In response, the Agency's counsel expressed concern that there was nothing that the Agency could do at that point to "make [N.A.] eligible" for funding because she had been determined to be ineligible for AFDC-FC funds as of January 2019, when she moved out of the guardian's home. There was discussion among the court and counsel concerning the fact that the eligibility determination was subject to an administrative hearing process, which had not yet been initiated. NFD counsel countered that the administrative hearing process would be futile because the Agency had taken the position that N.A. was not eligible for AFDC-FC funds. At the conclusion of this discussion, the court ordered supplemental briefing on these issues and set the matter for further hearing.

In response to the court's order for supplemental briefing, the Agency submitted written exhibits to show that, after N.A. filed her petition for reentry and disclosed that she had moved out of the guardian's home, the following events occurred: In late May 2020, the Agency updated its placement documentation to reflect that N.A.'s placement at the guardian's home closed on January 27, 2019, because N.A. moved out of the home. Further, in June 2020, the Agency sent a "NOTICE OF ACTION Foster Care Termination" (NOA) to "[Julie] for [N.A.]" at the guardian's home address, indicating that foster care aid was discontinued as of January 27, 2019, based on the fact that the guardian was no longer providing foster care or a foster home for N.A. The NOA contained a disclosure of administrative hearing rights.

6

At the continued special hearing in August 2020, the court admitted the supplemental briefs in evidence by reference and modified its previous ruling. The court decided that it would not grant N.A.'s petition for reentry under section 388.1 and instead, ordered the Agency to properly notify N.A. directly, rather than at the guardian's home address, of its decision to terminate AFDC-FC funding so that N.A. could pursue administrative remedies. The court stated that it was not authorized to make any funding eligibility determinations and that the court could not conclude that an administrative hearing process would be futile. At the same time, the court indicated that it would allow NFD counsel to file a motion to request the appointment of a successor guardian for N.A.[6]

N.A.'s appeal followed.

DISCUSSION

I. *Request for Judicial Notice*

While this appeal was pending, N.A. filed a request for judicial notice of the "Decision of the Administrative Law Judge, *In the matter of claimant* [N.A.] (Feb. 12, 2021), Case No. SHN-10469549," attached to the request as an exhibit (ALJ decision). N.A. argues that the ALJ decision is relevant for several reasons, including to show that she "request[ed] an administrative hearing on the [A]gency's decision to deny continued AFDC-FC benefits" and that the ALJ rendered a decision on February 12, 2021.

---

[6] In her supplemental brief, NFD counsel asserted that a potential avenue of relief for N.A. would be for the juvenile court to appoint a successor guardian, which was within the court's power as noted in *In re A.F.* (2013) 219 Cal.App.4th 51 (*A.F.*). There is no claim of error raised as to this aspect of the court's ruling, and accordingly, we do not address it.

The Agency opposes the request for judicial notice to the extent that N.A. is using the ALJ decision to establish that she has exhausted her administrative remedies. The Agency maintains that N.A. has not exhausted her administrative remedies. It is undisputed that the ALJ decision is a judicially noticeable matter under Evidence Code section 452.

We agree with the Agency that the ALJ decision does not establish that N.A. has exhausted her administrative remedies. Within the decision itself, there is a disclosure of an administrative right to rehearing as well as the right to petition the superior court for review under Code of Civil Procedure section 1094.5. We nonetheless grant N.A.'s request for judicial notice on the ground that the ALJ decision is relevant to our determination of the issues on appeal. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds by *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)

II. *The Juvenile Court Did Not Err in Denying N.A.'s Petition for Reentry*

N.A. contends that the juvenile court's order denying her petition to reenter dependency jurisdiction is based on an erroneous interpretation of section 388.1 and related extended foster care statutes.

" 'The interpretation of a statute is a question of law we review independently.' " (*Adoption of A.B.* (2016) 2 Cal.App.5th 912, 919.) "[T]he fundamental goal of statutory interpretation is to ascertain and carry out the intent of the Legislature." (*People v. Cruz* (1996) 13 Cal.4th 764, 782.) " ' "To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent." ' " (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 905.)

"Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. [Citation.] Nonetheless, a court may

8

determine whether the literal meaning of a statute comports with its purpose. [Citation.] We need not follow the plain meaning of a statute when to do so would 'frustrate[ ] the manifest purposes of the legislation as a whole or [lead] to absurd results.' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.) "Even unambiguous statutes must be construed to avoid absurd results which do not advance the legislative purpose[.]" (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1304, 1306 (*Upland Police*) [construing statute that allows officer to select representative of choice during interrogation to include reasonableness limitation; officer may not pick a representative who is not available and thereby prevent interrogation from happening].)

"The overriding principle is that '[i]nterpretation must be reasonable.' (Civ. Code, § 3542.)" (*Upland Police*, *supra*, 111 Cal.App.4th at p. 1304.)

Further, "[g]iven the complexity of the statutory scheme governing dependency, a single provision 'cannot properly be understood except in the context of the entire dependency process of which it is part.' " (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1235.)

N.A. claims that she should have been allowed to reenter the juvenile court's jurisdiction under section 388.1. Section 388.1, subdivision (a), provides: "A nonminor who has not attained 21 years of age may petition the court in which he or she was previously found to be a dependent or delinquent child of the juvenile court for a hearing to determine whether to assume dependency jurisdiction over the nonminor, if he or she meets any of the following descriptions[.]" There are four categories of qualified petitioners (§ 388.1, subd. (a)(1)-(4)), and N.A. asserts that she fits the second category, which provides in pertinent part:

> "(2) He or she is a nonminor former dependent, as defined in subdivision (aa) of Section 11400, who *received . . . aid*

9

*after attaining 18 years of age* under Kin-GAP pursuant to Article 4.5 (commencing with Section 11360) or Article 4.7 (commencing with Section 11385) of Chapter 2 of Part 3 of Division 9, or AFDC-FC pursuant to subdivision (e) of Section 11405, and whose former guardian or guardians no longer provide ongoing support to, and no longer receive aid on behalf of, the nonminor after the nonminor attained 18 years of age, but before he or she attains 21 years of age." (§ 388.1, subd. (a)(2), italics added.)

As enacted, subdivision (a) of section 388.1 sets out categories of nonminors who continued to receive a form of financial aid after attaining the age of 18, but for some reason, such as the death of a guardian or adoptive parent, stopped receiving aid prior to attaining the age of 21. (§ 388.1, subd. (a); see generally *In re Jesse S.* (2017) 12 Cal.App.5th 611, 618 (*Jesse S.*) [discussing purpose of section 388.1].) Only these specified nonminors may petition the juvenile court for reentry into the dependency system under section 388.1. (Legis. Counsel's Dig., Assem. Bill No. 2454, Stats. 2014, ch. 769 (2013-2014 Reg. Sess.) ["This bill would . . . authorize a nonminor who has not attained 21 years of age to petition the court . . . if the nonminor received public assistance after attaining 18 years of age, as specified, and his or her former guardian or guardians or adoptive parent or parents no longer provide ongoing support to, and no longer receive payment on behalf of, the nonminor"].)

Other subdivisions of section 388.1 address procedural aspects of filing the petition for reentry, hearing requirements, factual findings the juvenile court must make in order to assume jurisdiction over the nonminor, and the Agency's responsibilities. (§ 388.1, subds. (b)-(e).)

The issue in this case is whether N.A. "received . . . aid after attaining 18 years of age under . . . AFDC-FC pursuant to subdivision (e) of Section 11405," thus allowing her to petition to reenter the dependency system.

10

(§ 388.1, subd. (a)(2); see also §§ 11403, subd. (c) [referring to "nonminor former dependent receiving aid"], 11405, subd. (e)(1) [allowing a youth to "remain eligible" for AFDC-FC benefits].)  N.A.'s position is that section 388.1, subdivision (a)(2) requires only that her guardian actually received AFDC-FC payments on N.A.'s behalf after she turned 18, i.e., after January 2020, and that it is of no legal consequence whether N.A. or the guardian was *eligible* to receive those payments.  In contrast, the Agency's position is that in order for N.A. to be allowed to petition to reenter the juvenile court's jurisdiction, the relevant inquiry is whether the guardian was eligible, or legally entitled, to receive AFDC-FC payments after N.A. turned 18, not merely whether the guardian in fact received such payments.  The Agency posits that a section 388.1 petitioner must have *validly* received AFDC-FC payments, and in this case, the Agency has classified the AFDC-FC payments made on N.A.'s behalf after January 27, 2019, as "overpayments" that are subject to collection or recoupment.

Unfortunately for N.A., the Agency has the better position.  When the Legislature required a nonminor to have "received" the specified financial aid, we are confident that it did not intend to include situations in which the financial aid was inadvertently or mistakenly paid, or unlawfully received. (See *Upland Police*, *supra*, 111 Cal.App.4th at p. 1305 [literal application of statute would defy common sense and lead to absurd result].)  The Legislature intended to assist certain youth transitioning to adulthood— those between the ages of 18 and 21—by continuing their financial aid and services.  (*Jesse S.*, *supra*, 12 Cal.App.5th at pp. 617-618 [legislative goal was to "ensure services to young people between ages 18 and 21 who had been in foster care"]; *A.F.*, *supra*, 219 Cal.App.4th at p. 55 [legislative intent was to allow "certain youth in foster care to continue receiving assistance payments

11

after turning 18"].) To achieve the legislative goal, the aid that was "received" by the nonminor former dependent after turning 18 must have been aid to which the recipient was eligible or legally entitled to receive.

Our construction of subdivision (a) of section 388.1 is bolstered by a consideration of the internally referenced AFDC-FC benefits statute—subdivision (e) of section 11405—which provides that a nonminor former dependent, like N.A., who was in a nonrelated guardianship, shall "*remain eligible* for AFDC-FC benefits . . . until the youth attains 21 years of age, provided that the youth enters into a mutual agreement with the agency . . . ." (§ 11405, subd. (e)(1), italics added; see also § 11403, subd. (c).) The statute thus contemplates continuous eligibility for AFDC-FC benefits. (§ 11405, subd. (e)(1).)

N.A. argues that our construction of section 388.1 will require courts to adjudicate eligibility for AFDC-FC payments, which they generally may not do. However, we are not persuaded that juvenile courts deciding petitions for reentry will be required to adjudicate the issue of eligibility for AFDC-FC payments. Legal guardians are required to timely report to the Agency any changes in placement. (E.g., §§ 11403, subd. (c) ["the payee and nonminor shall report any change in placement or other relevant changes in circumstances that may affect payment"], 11405, subd. (a); *Timmons v. McMahon* (1991) 235 Cal.App.3d 512, 515 [AFDC-FC aid will be paid to an eligible child living with a nonrelated legal guardian "provided that the guardian cooperates with the local welfare department"].) The Agency's funding eligibility determinations do not necessarily or even typically coincide with juvenile courts' consideration of petitions for reentry. For example, if the guardian and/or N.A. had reported N.A.'s move in January

12

2019 or shortly thereafter, the Agency could have intervened at that time and the resulting outcome for N.A. would have been different.

Based on our review of the record, the Agency demonstrated that it retroactively terminated AFDC-FC payments to the guardian, effective as of January 2019. As a result, N.A. did not meet the requirements for reentering the dependency system under section 388.1 because she was not validly receiving financial aid at the time she turned 18 in January 2020, or thereafter. Her case is regrettable insofar as it appears that the Agency may not have fully advised N.A. of her options or the ramifications of her moving out of the guardian's home before her 18th birthday. While the Agency's decision is subject to an administrative hearing process through which N.A. might obtain relief, the juvenile court did not err in denying her petition for reentry under section 388.1.

III. *The Juvenile Court Did Not Err in Declining to Determine N.A.'s Eligibility for AFDC-FC Payments*

As an alternative basis for reversal, N.A. contends that the juvenile court should have decided whether she was eligible for AFDC-FC without requiring her to exhaust administrative remedies. N.A. argues that the futility exception applies.

Determining eligibility for AFDC-FC is "a function that rests with [the] Agency as part of the executive branch of government." (*A.F.*, *supra*, 219 Cal.App.4th at p. 59; *In re Darlene T.* (2008) 163 Cal.App.4th 929, 938-939 (*Darlene T.*).) "The courts do not have the authority to order a social services agency to make AFDC-FC payments without an administrative determination of eligibility for those payments, and judicial review of eligibility determinations is ordinarily limited to the consideration of a petition for writ of administrative mandate of the eligibility decision." (*A.F.*, at p. 60; see also *In re Joshua S.* (2007) 41 Cal.4th 261, 273-274 (*Joshua S.*).)

13

Exceptions to the rule requiring exhaustion of administrative remedies may lie " 'when the agency is incapable of granting an adequate remedy [citation] or when resort to the administrative process would be futile because it is clear what the agency's decision would be [citations].' " (*Darlene T.*, *supra*, 163 Cal.App.4th at p. 940; *Joshua S.*, *supra*, 41 Cal.4th at p. 274.)

The futility exception applies only when the petitioner is able to " 'state with assurance' " that the Agency would rule adversely in the petitioner's case, which usually cannot be done when the issue has never been presented for hearing. (*Joshua S.*, *supra*, 41 Cal.4th at p. 274.)

We cannot conclude that requiring N.A. to exhaust administrative remedies would necessarily be a futile exercise. Both parties acknowledge that her case involves an unusual set of factual circumstances. The probable administrative decision " '[can]not be forecast' " before her case is even presented to an administrative tribunal. (*Joshua S.*, *supra*, 41 Cal.4th at p. 274; *Darlene T.*, *supra*, 163 Cal.App.4th at pp. 940-941.) Despite the Agency's current position, it is possible that the administrative hearing process may cause the Agency to review its regulations and its determination of N.A.'s eligibility for AFDC-FC payments. The process will also yield a comprehensive record and final administrative determination for the superior court to review. (*Darlene T.*, at p. 941.)

Further, N.A. has not made an adequate showing of irreparable injury to circumvent the exhaustion requirement. We are sensitive to the timing issue—i.e., that time marches on while the administrative process unfolds. (See *Jesse S.*, *supra*, 12 Cal.App.5th at p. 620 [administrative action takes "a large chunk out of the life of a young person 18 to 21"].) However, if the Agency's eligibility determination is found to be erroneous, N.A. has not shown that the Agency would be unable to make corrective payments.

14

Finally, we agree with the Agency that the juvenile court properly declined to make its own determination as to whether N.A. was eligible for AFDC-FC funding, respecting the separation of powers doctrine. (*Joshua S.*, *supra*, 41 Cal.4th at p. 274 ["a juvenile court may not order the [Agency] actually to make AFDC-FC payments . . . unless the administrative process is invoked *and* it is determined through that process that the children are eligible for AFDC-FC payments"].) The court's initial inclination to grant N.A.'s petition for reentry raised a host of internal Agency issues relating to funding mechanisms, which the court was ill-equipped, and without authority, to address. The court did what it could, which was to ensure that N.A. was notified of the potential availability of an administrative hearing to address her eligibility for AFDC-FC payments. The judicially noticed ALJ decision issued in February 2021 demonstrates that the administrative review process is underway and that further administrative remedies may still be available to N.A.

## DISPOSITION

The order is affirmed.

AARON, J.

WE CONCUR:


HALLER, Acting P. J.


O'ROURKE, J.

16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re N.A., a Person Coming Under the Juvenile Court Law. | D077956 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3643A) |
| v. | ORDER MODIFYING OPINION AND CERTIFYING FOR PUBLICATION |
| N.A., | |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 27, 2021, be modified as follows:

1. Toward the end of the first full paragraph on page 12, after the sentence that ends, "for AFDC-FC benefits," add as footnote 7 the following footnote:

> [7] The issue of whether a nonminor former dependent must be continuously eligible for AFDC-FC benefits in order to reenter the dependency system is not before us, and accordingly, we do not decide that matter. We merely note that the AFDC-FC benefits statute supports our conclusion that, to reenter the dependency system, aid that was "received" by the nonminor former dependent after turning 18 must have been aid for which the recipient was eligible or legally entitled.

The opinion in the above-entitled matter filed on April 27, 2021, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion as modified herein be published in the Official Reports.

There is no change in judgment.

HALLER, Acting P. J.

Copies to:  All parties

2